Blood v. Wood.

---

### CYNTHIA BLOOD *vs.* ELIJAH WOOD.

The levy of an execution on land which is not the judgment debtor's does not work such a disseizin of the true owner, as will prevent his maintaining an action of trespass, without reëntry, against the judgment creditor or those acting under him.

An execution was levied on land not the judgment debtor's, being part of a large unenclosed meadow, and the judgment creditor entered thereon two or three times for the purpose of showing the grass for sale, but took no actual possession : He afterwards advertised a sale of the grass, in a public newspaper, as grass growing on his land and caused the same to be sold at auction, at a distance from the land, and the purchaser thereof cut and carried it away — the true owner of the land having no actual notice of the proceedings. *Held,* that these acts did not constitute such a disseizin *or ouster of the true owner, as to prevent his maintaining an action of trespass* against the purchaser of the grass

TRESPASS for breaking and entering the plaintiff's close in Concord, (being part of Great Meadows, so called, and a piece of upland adjoining,) and cutting and carrying away the grass there growing, in July, 1837. Defence, that said close was the soil and freehold of Josiah Davis, of whom the defendant pur chased said grass, and by whose license he entered and cut it. Trial before *Putnam* J. from whose report it appeared, that the plaintiff, to prove her title to said close, gave in evidence a deed from A. B. Heywood, conveying the same to her, dated April

17th, 1834, and registered October 15th, 1839. The defendant gave in evidence a copy of an execution in favor of said Davis against T. P. Meriam, and a levy thereof upon the same close, as the property of said Meriam ; which execution and levy were registered January 14th, 1837, and returned to the office of the clerk of the court from which it issued.

Said Josiah Davis, called as a witness by the defendant, testified, that after said levy, and before the alleged trespass in question, he went upon the land several times, to show the grass to different persons ; that in the summer of 1837, he three times advertised the grass, growing on said land, for sale, in a newspaper printed in Concord, which advertisements stated that the grass on his land was to be sold on a certain day, but did not state, as he recollected, where the sale was to be ; that the sale was not made on that day, but was adjourned for one week, on account of unfavorable weather ; that it was his impression that he gave notice of said adjournment, in the same newspaper, but could not say, with certainty, that he did so ; that the sale was made at the road, a quarter of a mile from the said land, but he believed it was within sight of the land ; that the sale was in presence of " a considerable number of persons from various parts of the town "; that the defendant bought the grass, at that sale, and cut and carried it away.

There was no evidence of notice to the plaintiff of the aforesaid levy or sale, except from the foregoing facts, and those which follow.

S. Barrett, called as a witness by the plaintiff, testified that he plaintiff sold him the grass on said close, in 1836, and that ne cut it. He also testified that he attended the auction, and bid on the grass, when the defendant purchased it, in the summer of 1837 ; that the plaintiff was and has been poor, and that she removed from Concord to Lowell, in the spring of 1836, and resided at the latter place up to the time of the commencement of this action ; that he, the witness, resided in Concord, but was in the habit of going to Lowell once in a week, and that he frequently saw the plaintiff there ; but he did not state at what time he was thus in the habit of going to Lowell.

The plaintiff introduced other testimony showing that she, in 1834 and 1835, sold the grass on said close to different persons, who cut and carried it away ; and that, in one of those years, " it was cut on shares."

It was agreed by the parties, that it was also proved at the trial, that the plaintiff, for many years, lived in the family of the aforesaid T. P. Meriam.

On this evidence, the defendant contended that the plaintiff was disseized, at the time of the alleged trespass, and therefore could not maintain her action ; but the judge instructed the jury that the plaintiff was entitled to recover ; and a verdict was returned for her accordingly. The defendant excepted to this instruction, and moved for a new trial.

*E. R. Hoar*, for the defendant. A disseizee cannot maintain an action of trespass, until after reëntry. Stearns on Real Actions, 409, 410. *Bigelow* v. *Jones*, 10 Pick. 161. *Allen* v. *Thayer*, 17 Mass. 299, 302. The plaintiff was disseized, at the time of the trespass alleged in her declaration. Seizin of the *locus in quo* was delivered to Davis, when his execution was levied thereon ; and so far as it regarded Meriam, the mere levy, even if defective, was a disseizin. See Rev. Sts. *c.* 73, §§ 15, 16. *Gore* v. *Brazier*, 3 Mass. 538, 539. *Langdon* v. *Potter*, 3 Mass. 215. It was decided in *Bott* v. *Burnell*, 9 Mass. 99, that a levy is not incontrovertible evidence of seizin as against a third person, the true owner, without an actual entry, though it is so as to all others. In the present case, there was an actual entry under the levy, before the alleged trespass.

A levy on the land of a grantee under a defective deed operates as a disseizin of the grantor, so that nothing passes by his subsequent conveyance. *Gookin* v. *Whittier*, 4 Greenl. 16. The case of *Bartlett* v. *Perkins*, 1 Shepley, 87, was precisely like the case at bar, except that the judgment debtor was in possession ; and it was held that the true owner was disseized by the levy, though the trespass sued for was the first entry after the levy.

One who enters under a record title is treated as a disseizor, for his own protection, when without such title he would be re-

garded as only a trespasser. *Little* v. *Megquier*, 2 Greenl. **176.** *Proprietors of Kennebec Purchase* v. *Laboree*, 2 Greenl. **275.**

In *Robison* v. *Swett*, 3 Greenl. 316, it was held that where acts of ownership would amount only to trespasses, if unknown to the true owner, they may constitute a disseizin, when known by him. The facts in the case at bar show that the plaintiff had knowledge of Davis's levy. In *Proprietors of Kennebeck Purchase* v. *Springer*, 4 Mass. 416, the party in possession had no record title, and the court held that his occupation was not so notorious as to raise a presumption of notice to the true owner. See also *Higbee* v. *Rice*, 5 Mass. 344. *Pray* v. *Pierce*, 7 Mass. 381. Such occupation, as if continued twenty years would bar a writ of entry, is a disseizin in its inception. *Chapman* v. *Gray*, 15 Mass. 446. Here Davis had such an occupation.

Disseizin is a fact, to be found by a jury. *Pray* v. *Pierce*, 7 Mass. 381. *Taylor* v. *Horde*, 1 Bur. 113. If a jury, therefore, on the evidence reported, could find a disseizin, without such an abuse of discretion as would induce the court to set aside their verdict, the defendant has a right to a new trial, in order to submit that question.

Is the disseizin, in the present case, only at the election of the plaintiff? The leading case on this point is *Taylor* v. *Horde*, 1 Burr. 107, where Lord *Mansfield* came to the conclusion that in every case, except that of fines, and a statute bar, a party, whose entry is not tolled, may consider himself as not disseized, at his election.

It is submitted that this doctrine cannot be supported : 1. Because the doctrine of disseizin by election originated in extending the benefits of the assize of novel disseizin, and was intended to multiply cases of disseizin, by including some which were not strictly so at common law ; and never to exclude real cases of disseizin. 2. The cases cited do not support this doctrine. They are all, except two, not cases of actual ouster, but where the disseizin obviously only existed at the election of the owner ; as of a tenant conveying a larger estate, and the like. The two cases are *Bunter* v. *Coke, & Pouseley* v. *Blackman* — both cases

upon the validity of a devise ; and in one there had been a reëntry after the disseizin, upon which point that case turned ; and in the other, the only disseizin was the grant of an estate ʻor years-by tenant at will. 3. His lordship's conclusion cannot be reconciled with the numerous cases in England and this country, where a deed has been held to pass no estate, by reason of the disseizin of the grantor ; and those cases, like the one at bar, where trespass was held not to lie after a disseizin, before a re entry. 4. But however the case might have been between the plaintiff and Davis, the election cannot be made to the prejudice of an innocent third person, who came in by title, as the defendant did. He held no estate in the land, but entered under a mere revocable license, which required of him no other caution or inquiry than to see who was in the actual possession. Especially should the plaintiff not be allowed her election, when, by neglecting to put her deed on record, she had given no legal notice of her title. Her previous possession was ambiguous ; it might have been held under Meriam, or it might have terminated, and the land have passed to Meriam before Davis's levy. If a deed, when recorded, has relation back to the time of its execution, it ought not to have such relation to the injury of third persons, acting honestly in ignorance of its existence.

*Hopkinson*, for the plaintiff. A distinction was early taken between the effect of a levy of an execution, under our statutes, on the land of the judgment debtor, and the land of a third per son. This is shown by cases cited by the defendant's counsel. Thus in *Gore* v. *Brazier*, 3 Mass. 539, *Parsons*, C. J. says, if a creditor levies on land not his debtor's, he is not protected by his execution ; but the true owner may maintain trespass against him. But if the levy necessarily operated as a disseizin of such owner, he could not maintain trespass. S. P. *Bott* v. *Burnell*, 11 Mass. 165, and 9 Mass. 99. *Wyman* v. *Brigden*, 4 Mass. 155. It is not to be denied that this distinction was not clearly stated in *Langdon* v. *Potter*, 3 Mass. 215.

If, however, this were not so, yet by the principles of the common law, the owner of land on which an execution is levied without legal authority, may treat the judgment creditor as a

mere trespasser, or as a disseizor, at his election.    Disseizin by
election extends to all cases in which there is not an actual oust-
er or amotion.    *Taylor* v. *Horde*, 1 Bur. 60.    The decisions
cited by Lord *Mansfield*, in that case, fully sustain the doctrine
which he there asserted.

The acts done in this case, by Davis, after his levy, did not
work a disseizin of the plaintiff.    Stearns on Real Actions, 5,
39.    *Proprietors of Kennebeck Purchase* v. *Call*, 1 Mass. 483.
*Brimmer* v. *Proprietors of Long Wharf*, 5 Pick. 131.    *Bates*
v. *Norcross*, 14 Pick. 224.  *Sparhawk* v. *Bullard*, (*ante*, 100.)

The evidence is insufficient to prove that the plaintiff had no-
tice of Davis's levy, or of his acts and of those acting under him.

SHAW, C. J.   In an action of trespass *quare clausum fregit*,
the question is, supposing the plaintiff has proved a good title by
deed, whether she was disseized at the time of the alleged tres-
pass.   A preliminary question was indeed suggested, but not
much pressed, founded on the fact, that although the plaintiff's
deed purports to have been executed in 1834, it was not regis-
tered until October, 1839.    But as no other title, derived from
the same grantor, intervened, the want of registration is immate-
rial, and it is sufficient that it was registered at any time before it
was offered in evidence.

The question of disseizin, when it is set up to defeat the pos-
sessory interest of the true owner, and where the owner does
not elect to treat himself as disseized, for the sake of his reme-
dy, is one of considerable difficulty, depending upon technical
law, and in regard to which the authorities are in some conflict.

The cause has been ably argued on both sides, and the au-
thorities carefully examined.

There is no doubt that if the plaintiff was disseized, and so
continued at the time of the alleged trespass, the action will not
lie ; but the question is, upon the facts, whether she was so dis-
seized.

The disseizin is placed upon two grounds : 1. The levy of
the execution of Davis upon the premises as the estate and prop-
erty of Meriam, which, it is insisted, vested the seizin *de facto*
in Davis, and operated as a disseizin of all others.    2. The

45 *

actual entry under a claim of title, openly advertising and selling the crop, and the taking and carrying away of the crop of grass under a claim of title.

As to the first ground, it is undoubtedly now well settled, that the levy of an execution, under the statute, vests an actual seizin in the creditor, and ousts the debtor ; so that the creditor may enter and retain possession as against the debtor, or may maintain trespass against him, or maintain a real action counting on his own seizin. *Gore* v. *Brazier*, 3 Mass. 523. But the consequence of the creditor being seized by force of the levy, and delivery of seizin by the officer, follows only in case the land was liable to the extent, and belonged to the debtor at the time of the levy. If it did not belong to the debtor, the officer acted without authority. In the leading case on this subject, *Gore* v. *Brazier*, it is stated that if the right owner be dispossessed, the act is tortious, and he may maintain trespass against the creditor and the sheriff, or he may bring his writ of entry against the creditor as a disseizor. Now it is very obvious that if he could bring trespass, he is not absolutely disseized ; for, if disseized, he cannot maintain trespass, till reëntry. It is also added, that he may have his writ of entry against the creditor, as a disseizor ; that is, he may elect to consider himself disseized, for the sake of his remedy, and with a view to try his title with the execution creditor ; and the creditor, having elected to levy on the estate, and take seizin of the officer, would be estopped to deny the legal consequences of such act. The levy may be considered, as between the parties, as devesting the seizin of the debtor, and giving seizin to the creditor, but has no effect to disseize any other person, who is the true owner, unless accompanied with such acts as would amount to an actual ouster. *Bott* v. *Burnell*, 9 Mass. 96. 11 Mass. 165.

2. Then the question is, whether the acts detailed in the report, independent of the supposed legal effect of the levy, constituted such a disseizin of the owner as to compel her to enter, before she could bring an action of trespass. In one respect, the levy of an execution, if returned and recorded, may have the same effect as a deed recorded, in ascertaining the extent of a dis-

seizin.   If a party, without claim of title, does acts amounting to an actual ouster, it will ordinarily operate as a disseizin only to the extent of such actual ouster ; but if he enter and do the same acts under color of a deed recorded, such deed, being evidence of his intent, may qualify the act of ouster, and operate as a disseizin of the whole parcel expressed in the deed. The levy of an execution being in this respect alike matter of record, may have a like effect.   Still the question recurs whether the acts stated amount to a disseizin ; and this depends not upon the levy in the one case, or the deed in the other, but on the nature of the acts themselves.

Instead of undertaking to give a definition of disseizin, I prefer referring to the cases· where the subject is discussed and an approximation towards an exact definition effected.   *Proprietors of Kennebeck Purchase* v. *Springer*, 4 Mass. 416.   *Brimmer* v. *Proprietors of Long Wharf*, 5 Pick. 131.   *Poignard* v. *Smith*, 6 Pick. 172.   *S. C.* 8 Pick. 272.

One point seems to be well settled, which is, that very strong acts of exclusive possession, such as building, enclosing, or cultivating, and that for a long time, and openly and notoriously, are necessary in order to constitute an actual ouster of the true owner who has no notice of such acts.

The premises, in the present case, consisted of unenclosed meadow land, part of a large tract, used only for mowing.   The plaintiff had disposed of the grass the two or three previous years, and had the actual possession, prior to Davis's levy of execution.   That levy was made in January previous ; so that he had taken no crop, at the time of the supposed trespass.   He entered upon the premises two or three times, to show the grass, but took no actual possession.   The grass was advertised, but it was advertised as the growth of a tract of meadow belonging to Davis, and would give the plaintiff no notice of any intention to sell the grass of her meadow.   The actual sale at auction was made at the road, a quarter of a mile distant from the land. The court are therefore of opinion, that this evidence falls far short of proving an actual ouster of the plaintiff, and therefore

that she had the right of possession as well as the better title, and might well maintain this action.

The fact last stated in the agreement, that the plaintiff for many years lived in the family of Davis's debtor, Meriam, appears to be immaterial. If it was intended to rely on the point that she held it fraudulently, upon a secret trust for Meriam, and to insist on the validity of Davis's levy upon the premises as the estate of Meriam, supposing a levy could be made under those circumstances, that ground should have been distinctly taken and the facts fully set forth, and tried by jury.

*Judgment on the verdict*